IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02886-PAB-MEH

TERRY VIGIL,

      Plaintiff,

v.

POLLY WALTERS, RN,
KARLIN WERNER, RN,
DR. JERE SUTTON, Physician, and
DR. LOUIS CABILING, Physician, each in their individual capacities,

      Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court are a Motion for Summary Judgment filed by Defendants Letha Walter, Ernest Karlin,[1] and Louis Cabiling ("CCCF Defendants") [filed December 15, 2010; docket #58] and a Motion for Summary Judgment filed by Defendant Jere Sutton [filed December 15, 2010; docket #59]. These matters are referred to this Court for recommendation. The motions are fully briefed and oral argument would not materially assist the Court in their adjudication. For the reasons that follow, the Court respectfully recommends that the District Court **GRANT IN PART AND DENY IN PART** Defendants' motions.[2]

---

[1]According to Defendants, Letha Walter and Ernest Karlin are incorrectly named in this case as Polly Walters and Karlin Werner, respectively.

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo

## BACKGROUND

On December 7, 2009, Plaintiff commenced this action *pro se* pursuant to Section 1983 of 42 U.S.C. (Docket #3.) In essence, Plaintiff believes the Defendants violated his Eighth Amendment right against cruel and unusual punishment when they allegedly delayed treatment for his umbilical hernia from approximately August 2007 through February 2009, then allegedly delayed emergency surgery for sixteen hours from February 2, 2009 through February 3, 2009. (*See* docket #3 at 4-5.) Plaintiff requests a total of $150,000.00 in "compensatory damages," $1,500,000.00 for "pain and suffering," and $1,500,000.00 in punitive damages. (Docket #3 at 10.) Plaintiff contends that "the Defendant(s) were reckless and deliberately indifferent because they knew that if the Plaintiff did not have the surgery for his umbilical hernia they automatically disregarded an excessive RISK to the Plaintiff's HEALTH AND SAFETY." (*Id* at 6.)

The CCCF Defendants answered Plaintiff's Complaint on March 23, 2010, then filed the present Motion for Summary Judgment on December 15, 2010. (Dockets ##25, 58.) Defendants assert that Plaintiff lacks sufficient factual evidence as a matter of law establishing a cognizable Eighth Amendment claim against Defendants Walter, Karlin and Cabiling. (Docket #58 at 3.) Defendants argue that Plaintiff's entire claim is based on nothing more than a disagreement with Defendants concerning the treatment for his hernia, that Plaintiff has failed to present any medical opinion stating that the care he received was inadequate, and, at best, that Plaintiff's allegations assert mere negligence, which does not rise to the level of an Eighth Amendment claim. (*See id.* at

---

determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

6-9.) In addition, Defendants contend that Plaintiff has failed to exhaust his administrative remedies and, thus, his claim is barred by the Prison Litigation Reform Act. (*Id.* at 10-12.)

Defendant Sutton answered Plaintiff's Complaint on March 3, 2010, then filed the present Motion for Summary Judgment on December 15, 2010. (Dockets ##22, 58.) As with the other Defendants, Dr. Sutton asserts that Plaintiff lacks sufficient evidence raising an Eighth Amendment claim against him. Dr. Sutton attaches portions of Plaintiff's medical records supporting his argument that he was attentive, not indifferent, to Plaintiff's needs when he saw Plaintiff for the first time on February 3, 2009 and timely ordered surgery for the repair of Plaintiff's indurated hernia. Moreover, Dr. Sutton contends that Plaintiff's claim against him demonstrates at most only a difference of opinion with his medical treatment, which is not enough to show that Dr. Sutton "knew of and disregarded an excessive risk to inmate health and safety." Further, Dr. Sutton asserts that Plaintiff has failed to exhaust his administrative remedies and, because he failed to answer Dr. Sutton's requests for admissions, has admitted no liability on the part of Dr. Sutton.

Plaintiff primarily responds to the motions arguing that he has had insufficient discovery to be fully able to litigate his case. First, Plaintiff claims that, pursuant to Fed. R. Civ. P. 18 and 19, he needs discovery into Dr. Sutton's request for "joinder" in the Defendants' summary judgment motion.[3] Response at 2, docket #67. Second, he states, in conclusory fashion, "[t]he two motions submitted in request of summary judgment lacks [sic] merit and should be properly denied where the record has not been developed on a material factual issue." *Id.* at 11. In addition, Plaintiff

---

[3]In his motion, Dr. Sutton requests that the Court "allow him to join in the arguments of the co-defendants in their Motion for Summary Judgment, and allow the arguments and points made in Document 58 to apply to Dr. Sutton just as if he had re-stated those points in this filing." Docket #59 at 10. The Plaintiff fails to explain his alleged need to seek discovery for Dr. Sutton's request and the Court can perceive none. Rules 18 and 19 of the Federal Rules of Civil Procedure do not apply in this circumstance. Nevertheless, as set forth herein, the Court analyzes each of the Defendants' motions and the applicable arguments as they are presented to the Court.

disputes Dr. Sutton's assertion that he "immediately ordered surgery," where Plaintiff contends he was in the holding cell (before being released to the hospital) from 10:00 p.m. to 2:00 p.m. the following day, during which time Dr. Sutton was on duty. *Id.* at 6. Finally, Plaintiff argues that he could not properly respond to the requests for admissions because he was instructed that the responses be "under oath," and he has no way, as an incarcerated individual, to produce responses under oath. Plaintiff provided no evidentiary materials with his response. *Id.* at 4-5.

Due to Plaintiff's misunderstanding that he had a "right" to have legal representation at his deposition in this case, thus resulting in his refusal to answer questions at the deposition, the Court granted Defendants leave to re-depose the Plaintiff and file supplemental briefs in support of their motions for summary judgment. Docket #66. In their supplemental brief, the CCCF Defendants contend that Plaintiff admitted he was never denied treatment from any Defendants, that he simply disagreed with Dr. Cabiling's opinion that, prior to January 2009, surgery was not required, and that Plaintiff never filed any grievances against any of the Defendants. *See* docket #68. Dr. Sutton argues in this supplemental brief that Plaintiff admits the first time he ever saw Dr. Sutton was on February 3, Plaintiff confirms that his only complaint against Dr. Sutton is that he should have examined Plaintiff at 7:00 a.m., rather than 10:00 a.m., and Plaintiff has spoken with no medical professionals about Dr. Sutton's conduct. *See* docket #69. Plaintiff responds to these supplements reasserting his original claims and stating that he was told by his case manager that "surgery scheduling" is non-grievable. Dockets ##74, 75. Again, Plaintiff attached no evidentiary materials to his responses.

Defendants replied in support of their motion, asserting that Plaintiff has failed to rebut the stated "undisputed" facts with supporting documentation and failed to demonstrate the Defendants

4

were deliberately indifferent to his medical condition.[4]

## FINDINGS OF FACT

The Court makes the following findings of fact viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.

1. On or about March 6, 2007, the Plaintiff was diagnosed with a "ventral umbilical hernia" while incarcerated at the Fremont Correctional Facility. Complaint, docket #3 at 4.[5]

2. The physician's assistant who diagnosed Plaintiff told him that he was too obese to have surgery to repair the hernia. *Id.*

3. After his transfer to the Crowley County Correctional Facility ("CCCF") on August 27, 2007, Plaintiff started a diet and exercise program to lose weight so that he would be eligible for surgery to repair his hernia. *Id.* The Plaintiff lost seventy (70) pounds before his surgery in February 2009. *Id.* at 6.

4. From approximately August 2007 through January 2009, Plaintiff continuously complained to medical providers at CCCF of severe pain and discomfort from his hernia, but was told that no surgery would be performed until the hernia "twists" or had caused other complications that would warrant immediate surgery. *Id.* at 4.

5. In or about January 2009, Defendant Louis Cabiling requested an office visit with a general surgeon for the Plaintiff; however, the Utilization Management Committee for the CDOC denied

---

[4] In addition, without permission from the Court, Defendants filed reply briefs in support of their supplements. Dockets ##76, 77. Therefore, the Court did not consider these briefs in the adjudication of the present motion.

[5] In the summary judgment context, a pro se litigant's verified complaint may be treated as an affidavit as long as it satisfies the standards for affidavits outlined in Rule 56. *See Adams v. Dyer,* 223 F. App'x 757, 764 (10th Cir. 2007) (citing *Conaway v. Smith,* 853 F.2d 789, 792 (10th Cir. 1988)).

Dr. Cabiling's request and recommended "a trial of an abdominal binder." *See* January 14, 2009 Letter from Physician Health Partners to Dr. Louis Cabiling, docket #68-1.

6. On February 2, 2009 at approximately 10:00 p.m., the Plaintiff complained of "extreme pain" and was taken to the medical department where he was examined by Defendant Ernest Karlin. Complaint, docket #3 at 4; CDOC Ambulatory Health Record, February 2, 2009, docket #59-1. Nurse Karlin noted that Dr. Cabiling ordered by telephone "toradol 60 mg 1mxl stat" and "medical observation until seen by physician in am." *Id.*

7. On February 3, 2009, Defendant Letha Walter visited Plaintiff for a scheduled physical examination at 10:00 a.m. Complaint, docket #3 at 5. Nurse Walter described the Plaintiff as having "a very indurated painful hernia" and stopped the physical examination because of "severe pain." *Id.*

8. Plaintiff was also examined on February 3, 2009 by Defendant Jere Sutton, who found "a very indurated painful hernia of the umbilical - I was unable to reduce." CDOC Physical Examination form, February 3, 2009, docket #59-2. Dr. Sutton recommended a "surgical consult." *Id.*

9. The morning of February 3, 2009 was the very first time Plaintiff ever saw Dr. Sutton. Continued Deposition of Terry Vigil, January 28, 2011 (Cont'd Vigil Depo), at 34: 22-25, docket #69-1 at 2.

10. Following his examination of the Plaintiff, Dr. Sutton noted at 11:01 on February 3, 2009 that Plaintiff's hernia had been reducible in the past, but Plaintiff had been unable to reduce the hernia since the previous night. CDOC Ambulatory Health Record, February 3, 2009, docket #59-5. Dr. Sutton stated that the "8 cm indurated mass at the umbilicus" could not be reduced with effort over several minutes. *Id.* Dr. Sutton ordered "toradol 60 mg IM now" and changed Plaintiff's

medical level from "permanent" to "improveable." *Id.*

11.     According to the Plaintiff, he was able to reduce the hernia prior to the night of February 2, 2011. Cont'd Vigil Depo at 43: 24-25, 44:1-2, docket #69-1.

12.     At 12:45 on February 3, 2009, Nurse J. Brizendine and Dr. Sutton ordered that the Plaintiff be sent to "SMC ER" by ambulance for evaluation and treatment of a "non-reducible hernia." CDOC Ambulatory Health Record, February 3, 2009, docket #59-6.

13.     According to an Operative Procedure Report from St. Mary Corwin Hospital, dated February 3, 2009 and authored by Gary E. Lane, M.D., the Plaintiff underwent surgery to repair the "incarcerated hernia." SMC Operative/Procedure Report, February 3, 2009, docket #59-9. Dr. Lane noted that the surgery was successful, Plaintiff suffered no complications and he returned to the recovery room in stable condition. *Id.*

14.     Plaintiff was discharged and returned to the CCCF on or about February 18, 2009. *See* CIMST Report, February 17, 2009, docket #59-11; CDOC Ambulatory Health Record, February 18, 2009, docket #59-12.

15.     On February 21, 2009, Dr. Sutton examined the Plaintiff to "follow up for post umbilical hernia repair." CDOC Ambulatory Health Record, February 21, 2009, docket #59-13. Dr. Sutton noted that the "[i]ncisional area around the umbilicus is healing well with no signs of infection." *Id.*

16.     Plaintiff attests that he "tried to file a Step 1 Grievance, however, [he] was informed that surgery scheduling was not Grievable." Complaint, p. 7, docket #3 at 9; Cont'd Vigil Depo at 71: 9-19, docket #68-2 at 2.

## LEGAL STANDARDS

**I.      Construction of *Pro Se* Pleadings**

As Plaintiff proceeds *pro se*, the Court must construe his "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

**II.     Motion for Summary Judgment**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry

its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

### III.     Section 1983 Affirmative Link Requirement

In a Section 1983 claim, Plaintiff must allege an affirmative link between the Defendants' conduct and any constitutional violation in his Complaint. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001) (citing *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991)).  In order for a prison official to be liable for "deliberate indifference" under Section 1983, "the official must have been personally and directly responsible for the occurrence of the alleged Eighth Amendment violation." *Jenkins v. Denver County Jail*, No. 99-1335, 2000 WL 84893, at *2 (10th Cir. 2000) (unpublished) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)).  "Supervisors are only liable under § 1983 for their own culpable involvement" in the alleged violation, because government officials may not be held vicariously liable for the misconduct of their subordinates under Section 1983. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).

### IV.     Eighth Amendment Deliberate Indifference

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)).  Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher,* 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  A prisoner states a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health."

*Helling v. McKinney,* 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), overruled on other grounds by *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Mata*, 427 F.3d at 751 (citing *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or

11

considerable pain." *Garett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

## DISCUSSION

First, the Court must clarify that, although the Plaintiff alleges two "claims" under the Eighth Amendment - one for "deliberate indifference" and one for "cruel and unusual punishment" - the law recognizes one claim for cruel and unusual punishment in violation of the Eighth Amendment, for which a defendant may be liable if the defendant is found to be deliberately indifferent to the serious medical needs of the plaintiff. Here, Plaintiff's "claims" are based on the same set of facts and do not differ in any material respect. Therefore, for purposes of this recommendation, the Court will recognize the Plaintiff's allegations as stating a single claim against the Defendants for violation of the Eighth Amendment's cruel and unusual punishment clause.

### I.     CCCF Defendants

First, the Court notes that the CCCF Defendants, Louis Cabiling, Letha Walter and Ernest Karlin, have properly supported their motion for summary judgment with admissible evidence. *Trainor*, 318 F.3d at 979. In order to survive the motion, Plaintiff must satisfy his burden showing there are genuine issues of material fact to be determined. *Celotex*, 477 U.S. at 322. As Defendants properly supported their motion with Plaintiff's deposition transcript and prison medical records, Plaintiff may not rest on the allegations contained in the complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten*, 296 F.3d at 1180; Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), *except* the mere pleadings themselves." *Pietrowski*, 134 F.3d at 1008 (citation omitted).

Plaintiff, in responding to the present motions, provided no evidentiary materials in support of his arguments. However, as set forth above, the Court may rely on the Plaintiff's verified complaint as an affidavit and it may also look to Plaintiff's deposition testimony to determine

whether Plaintiff has demonstrated the existence of specific facts showing a genuine factual issue for trial. *See Scott*, 550 U.S. at 380.

In their motion, the CCCF Defendants contend that Plaintiff has failed to exhaust his administrative remedies concerning his claims. Defendants point to Plaintiff's deposition testimony asserting that Plaintiff admits he never filed a grievance concerning treatment for his hernia. While this may be true, however, Plaintiff actually testified, both in his Complaint and at his deposition, that he did not file a grievance because he was told by his case manager that "surgery scheduling in not grievable." *See* Cont'd Vigil Depo at 71: 9-19, docket #68-2; *see also* Complaint, p. 7, docket #3. Such testimony merely raises an issue of fact as to whether Plaintiff exhausted his administrative remedies. *See Hoover v. West*, 93 F. App'x 177, 181 (10th Cir. Feb. 19, 2004) ("Where prison officials prevent or thwart a prisoner from utilizing an administrative remedy, they have rendered that remedy 'unavailable' and a court will deem that procedure 'exhausted.'") (citing *Lyon v. Vande Krol*, 305 F.3d 806, 808 (8th Cir. 2002)). *But see Sparks v. Foster*, 241 F. App'x 467, 473 (10th Cir. June 19, 2007) (where plaintiff's allegation of being denied a grievance was *not* supported by sworn pleadings, affidavit or other evidentiary material, it carried no weight in summary judgment consideration) (emphasis added). This Court respectfully recommends that the CCCF Defendants' motion be denied in this regard.

In the alternative, the CCCF Defendants argue that Plaintiff cannot meet the subjective component of the test determining whether Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. That is, Defendants contend the facts viewed in the light most favorable to the Plaintiff do not demonstrate that Defendants consciously disregarded a substantial risk of harm to the Plaintiff. Defendants assert that, at most, Plaintiff's allegations may rise to the level of mere negligence and amount to nothing more than Plaintiff's

disagreement with the medical treatment he received.

As previously described, to prove an Eighth Amendment violation regarding medical care, Plaintiff must establish (1) an objectively serious medical need, and (2) a subjectively culpable state of mind on part of a defendant, in that the defendant knew of a substantial risk of harm yet did nothing to prevent or appease such risk. Plaintiff must show the CCCF Defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). He must establish that Defendants "deliberate[ly] refus[ed] to provide medical attention, as opposed to a particular course of treatment." *Fleming v. Uphoff*, No. 99-8035, 2000 WL 374295, at *2 (10th Cir. 2000) (unpublished) (quoting *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997)).

   A.   August 2007-January 2009 Time Period

Here, the facts demonstrate that Plaintiff complained from approximately August 2007 through January 2009 of "severe pain and discomfort" from his hernia and "was told repeatedly by the named Defendants that nothing can be done until the hernia either 'twists' or other complications arise to warrant immediate surgery." However, the Plaintiff also admits that during this same time period, he (or a medical provider) was able to reduce the hernia to a more stable condition. *See* Continued Deposition of Terry Vigil, January 28, 2011 ("Cont'd Vigil Deposition"), at 43: 17-25, 44: 1-9, docket #69-1. As such, this Court questions whether Plaintiff has raised a genuine disputed fact demonstrating that his hernia from August 2007 through January 2009 was a harm "sufficiently serious" to implicate the Eighth Amendment's cruel and unusual punishment clause. *See Callahan*, 471 F.3d at 1159.

Nevertheless, the Court finds that Plaintiff has failed to demonstrate disputed facts as to the subjective component of the deliberate indifference test. Plaintiff does not allege that Defendants

14

refused to examine or treat him during August 2007-January 2009 time period; rather, he alleges that they failed to order surgery to repair the hernia. The Tenth Circuit has determined "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." *Callahan*, 471 F.3d at 1160 (quoting *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996)); *see also Worrell v. Bruce*, 296 F. App'x 665, 670 (10th Cir. Oct. 15, 2008) (holding the same for decision of a prison nurse). Decisions such as a preferred course of treatment are based on medical judgment and are outside of the Eighth Amendment's scope. *Id.* (quoting *Estelle*, 429 U.S. at 107). *See also Florence v. Rios*, No. 07-cv-00380-REB-KLM, 2008 WL 538677 at *7 (D. Colo. Feb. 25, 2008) ("no constitutional claim is stated where a prisoner challenges only matters of medical judgment . . ." (citing *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992))).

The Plaintiff has provided no evidence from a medical professional that Defendants' decisions not to order surgery were incorrect or amounted to a "conscious disregard for a substantial risk of harm"; thus, Plaintiff's allegations demonstrate merely Plaintiff's own disagreement with the course of treatment provided by Defendants. However, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

  B. <u>February 2-3, 2009 Time Period</u>

With respect to the February 2-3, 2009 time period, during which the Plaintiff was taken to the medical department at 10:00 p.m. for "extreme pain," kept in the medical holding cell overnight, examined by a doctor the following morning at or about 10:00 a.m., and sent to the hospital for surgery at or about 2:00 p.m., the Plaintiff claims that the delay from 10:00 p.m. on February 2 to 2:00 p.m. on February 3 in getting into surgery caused him substantial harm. *See Olson v. Stotts*,

15

9 F.3d 1475, 1477 (10th Cir. 1993) ("[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.") (internal quotation marks and brackets omitted). However, Plaintiff does not dispute that a pain medication was prescribed for him by Dr. Cabiling upon his arrival in the medical department on February 2 nor that he was under medical observation during the time he was held in the medical cell overnight. *See, e.g., Johnson v. Standifird*, 400 F. App'x 369, 371 (10th Cir. Oct. 28, 2010) (finding no undue delay where spinal surgery performed three weeks after it was recommended and the plaintiff was placed on bed rest and given pain medications, a cervical collar, and a walker).

Plaintiff claims that the alleged 16-hour delay caused the loss of a "large portion of his intestine due to the fact that blood had dried and rotted the portion of his intestine which caused permanent and lasting damage." Complaint, p. 5, docket #3 at 7. However, other than Plaintiff's self-serving statement, the medical records show no evidence of any complications during the surgery or any permanent loss that is causing, or will cause, harm to the Plaintiff. The Plaintiff has come forward with no evidence raising an issue of fact that he suffered substantial harm as a result of the alleged 16-hour delay. *Cf. Oxendine v. Kaplan*, 241 F.3d 1272, 1278 (10th Cir. 2001) (a seven-day delay in seeking an outside specialist resulting in the pain and loss of a rotting finger was actionable); *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (a 36-hour delay in hospitalization for heart attack was sufficiently serious).

Plaintiff cites a case out of the Eighth Circuit for the proposition that a sixteen-hour delay in "priority one surgery needed for [an] inmate inflicts the sort of pain and suffering which would not serve any penological purpose and violates the Eighth Amendment." Response, docket #67 at 9 (citing *Johnson v. Lockhart*, 941 F.2d 705 (8th Cir. 1991)). In *Johnson*, the plaintiff inmate's doctor recommended immediate surgery for Johnson's hernia in January 1984 and warned that

16

Johnson's condition was serious, even life-threatening; however, the surgery was not performed until ten months later in October 1984. *Id.* at 706. The court reversed the trial court's dismissal and found that plaintiff's allegations of supervisory liability were sufficient to withstand a motion to dismiss. *Id.* at 707.

*Johnson* is distinguishable from this case and, thus, unpersuasive in two respects: first, the facts are different in that Johnson's surgery was characterized as "priority one" (here, despite Plaintiff's allegations, nothing in the medical records shows Plaintiff's surgery was an "emergency" or "priority"), Johnson's condition was diagnosed as "life-threatening" (there is no mention in Plaintiff's medical records that Plaintiff's condition was life-threatening or even serious), and the delay for Johnson's surgery was ten months (as opposed to the alleged sixteen hours stated here). Second, the legal standard in *Johnson* was pursuant to Fed. R. Civ. P. 12(b)(6), in which the court reviews a plaintiff's allegations early in the litigation to ensure they state a claim for relief. Here, the legal standard is pursuant to Fed. R. Civ. P. 56, for which the Plaintiff must demonstrate a genuine issue of disputed fact after he has had the opportunity to engage in the discovery process, a much higher burden than that required under Rule 12(b)(6). For this same reason, another case cited by the Plaintiff, *Coades v. Jeffes*, 822 F. Supp. 1189 (E.D. Pa. 1993), is not persuasive.

Plaintiff also argues generally that "the record has not been adequately developed on a material factual issue." Response, p. 11, docket #67. However, Plaintiff does not identify which factual issue(s) has (or have) not been developed in contravention of Fed. R. Civ. P. 56(d), which states that a court may provide certain relief "[i]f a nonmovant shows by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its position." Fed. R. Civ. P. 56(d) (emphasis added).

Consequently, the Court concludes that Plaintiff has not demonstrated a genuine issue of

17

material fact sufficient to allow his Eighth Amendment claim to proceed to trial against the CCCF Defendants. This Court respectfully recommends that the District Court grant the CCCF Defendants' motion for summary judgment.

## II.     **Defendant Sutton**

Dr. Sutton moves for summary judgment on three grounds: (1) the undisputed facts, (2) Plaintiff's alleged failure to exhaust administrative remedies, and (3) Plaintiff's confession of "key" issues through discovery.

For the same reason set forth above, the Court is not persuaded that summary judgment is proper for Plaintiff's alleged failure to exhaust administrative remedies. *See supra* at 12-13. In addition, the Court does not necessarily agree that summary judgment is proper solely based on a theory that the Plaintiff conceded "key" issues through failing to respond to requests for admissions. Proposed admissions such as "Dr. Sutton did not act with deliberate indifference with respect to your medical needs" and "Dr. Sutton did not subject you to cruel or unusual punishment" (*see* docket #59-3 at 9) request the truth of legal conclusions and may be objectionable under Fed. R. Civ. P. 36. *See Utley v. Wray*, No. 05-1356-MLB, 2007 WL 2703094, at *3 (D. Kan. Sept. 14, 2007) ("requests for admission relating to the truth of a legal conclusion are properly objectionable") (citing *Disability Rights Council v. Washington Metro. Area Transit Auth.*, 234 F.R.D. 1, 3 (D.D.C. 2006)); *see also Lakehead Pipe Line Co. v. American Home Assurance Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("requests for admissions of law which are related to the facts of the case are considered to be inappropriate"). As to other requests for admission proffered by Dr. Sutton, Plaintiff admitted to many during his deposition, and the Court has considered those in addressing Dr. Sutton's primary argument. *See infra*. Therefore, the Court respectfully recommends that Dr. Sutton's motion be denied as to these secondary challenges to Plaintiff's Complaint.

In his primary challenge, Dr. Sutton argues that, because the Plaintiff does not dispute the doctor ordered surgery for the Plaintiff immediately after examining him on February 3, 2009, the Plaintiff cannot raise disputed facts showing that Dr. Sutton was deliberately indifferent to Plaintiff's serious medical needs.

During Plaintiff's deposition, he admitted that February 3, 2009 was the first time he had seen Dr. Sutton. Cont'd Vigil Depo at 34:22-25, docket #69-1. In addition, Plaintiff conceded that his sole complaint concerning Dr. Sutton is that the doctor delayed in treating him from the time Dr. Sutton arrived at the medical department at 7:00 a.m. until the time of Plaintiff's examination at or about 10:00 a.m. *Id.* at 40: 9-16. The Plaintiff claims that the three-hour delay was in part responsible for the loss of a portion of his intestine. *Id.* at 40: 17-25, 41: 1-17. He characterizes Dr. Sutton's conduct as "negligence." *Id.* at 58: 19-25.

"A prison doctor's 'negligent diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment,' [citation omitted], as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.'" *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (quoting *Estelle*, 429 U.S. at 106). The record reflects that, upon examining the Plaintiff on February 3, Dr. Sutton recommended a surgery consult. CDOC Physical Examination form, February 3, 2009, docket #59-2. He then signed an order to transport the Plaintiff by ambulance to St. Mary Corwin Hospital at which the Plaintiff underwent a successful surgery. CDOC Ambulatory Health Record, February 3, 2009, docket #59-6. This conduct does not represent a deliberate refusal to provide medical treatment, nor a disregard for a substantial risk of harm to Plaintiff.

Even if true that Dr. Sutton negligently delayed examining the Plaintiff for three hours, such negligence does not meet the standards requisite in an Eighth Amendment deliberate indifference

19

claim. Plaintiff does not meet his burden of showing a genuine issue of material fact regarding this defendant. Consequently, the Court finds that Plaintiff's claim against Defendant Jere Sutton fails as a matter of law, and respectfully recommends that Dr. Sutton's motion for summary judgment be granted.

## **CONCLUSION**

The Court concludes the Plaintiff has failed to respond to the Defendants' motions with specific facts showing a genuine factual issue for trial as required by Fed. R. Civ. P. 56(e). *See Scott*, 550 U.S. at 380. Accordingly, for the reasons stated above and considering the entire record herein, the Court respectfully RECOMMENDS that the Motion for Summary Judgment filed by Defendants Letha Walter, Ernest Karlin, and Louis Cabling ("CCCF Defendants") [filed December 15, 2010; docket #58] and the Motion for Summary Judgment filed by Defendant Jere Sutton [filed December 15, 2010; docket #59] be **GRANTED IN PART AND DENIED IN PART** as set forth herein, and Plaintiff's Complaint be **DISMISSED WITH PREJUDICE**.

Dated at Denver, Colorado, this 16th day of May, 2011.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge